## GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

### v.

## HAROLD DIAZ, Defendant

Civil No. 40/1982

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

May 11, 1982

ANTHONY A. TAYLOR, Assistant Attorney General (Office of the Attorney General), Christiansted, St. Croix, V.I., *for Government*

RANDALL S. JOHNS, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

This matter comes before the Court on defendant Diaz' motion to suppress physical evidence. The Government has conceded that the search in issue was a warrantless search. By reason of this concession, the burden of persuasion is placed upon the Government. From the testimony of the various witnesses, I find the following facts.

On or about November 16, 1981, Corporal Libertad Velasquez, a member of the Department of Public Safety, responded to a radio communication advising him of an alleged burglary which had occurred at premises known as No. 89 Estate St. George, Frederiksted, St. Croix. In response to such radio communication he reversed his course of travel and covered the distance from Estate Hogensburg, which was his location at the time of reception of the communication, to the entrance of Estate St. George in a matter of minutes.

Upon arrival at the entrance gates of Estate St. George, he observed a jeep containing a driver and two persons in the rear seat as well as a brown automobile stopped immediately behind the jeep. As he turned into the entrance, the driver of the brown vehicle blew his horn to attract the corporal's attention. As a result of this Velasquez stopped his vehicle and conferred with the driver of the brown automobile who he later discovered to be the alleged victim, Mr. Barrant.

Barrant advised Velasquez that he was the person who called in the police report; that when he told Swanson of an alleged burglary, Swanson commented that he had just passed two young men on the road leading to the Estate St. George entrance as he, Swanson, was driving in; that Swanson had thereupon turned around and picked up the two young men to whom Swanson had referred and that he thought Velasquez should check them out. As a result of this single communication from Barrant to Velasquez, the officer approached the jeep and commenced questioning both defendants. Velasquez requested them to identify themselves and explain the basis of their presence in the area. In substance their response was that they were there to see a

gentleman whose name Velasquez did not remember but which defendants had given to him, although they further stated that they did not know where this person could be found except that he was in Estate St. George. They further stated that their intended purpose in meeting with this person was to get a job cutting grass. This investigative stop was unlawful. People v. Moorhead, 15 Cr. L. Rpt. 2454. At this juncture Velasquez told them to get out of the jeep, frisked them, and then directed them to empty their pockets which they did.

The officer testified that he considered them under arrest at this point in time. Defendants knew Velasquez to be a police officer and under the circumstances then present, their freedom to leave was impliedly restricted.[1]

When the contents of the defendant pockets were examined, among the items taken from defendant Towers was a nail clipper identified by Barrant as his property, taken from his house. In the interim, Officer Roman as well as other officers arrived at the scene and all persons repaired to the Barrant house. After a more thorough examination of the premises Barrant reported that some wrist watches had been taken and Velasquez then re-searched Diaz' person. Hidden in the waist band of Diaz' underclothing two watches later identified as belonging to Barrant were found.

As may be seen from the foregoing recital of the facts, the police officer had no probable cause to make an arrest. Clearly, the mere unexplained presence of an individual in the area of an alleged burglary without more does not rise to the level of probable cause. Certainly the officer had a right to "stop and frisk" the defendants under the rationale of Terry v. Ohio, 392 U.S. 1 (1968). Terry v. Ohio, however, gave the officer no authority to conduct more than a minimally intrusive search consisting of a pat down of defendant's outer garments. The officer's testimony discloses that the pat down was fruitless. Neither can the search be justified under the "search incident" exception since that exception is bottomed upon a lawful arrest. As has been indicated, the arrest in this case, not having been based upon probable cause, was unlawful and cannot, therefore, support the subsequent search. Draper v. United States, 358 U.S. 307 (1959). Both the constitution of the United States and the Revised Organic Act of 1954 define all warrantless searches as

[1] It is true that Velasquez testified, as the Government argues, that Swanson informed the officer that the defendants fit the description of burglars who had allegedly burglarized his home on an earlier date. This disclosure, however, came after the arrest and first search of the defendants. The Government cannot "bootstrap" to render this arrest lawful.

unreasonable unless they fall within one of the recognized exceptions such as the "search incident." U.S. Const. amend. IV; Revised Organic of 1954, § 3. See Trupiano v. United States, 334 U.S. 699 (1948). Since the initial search which resulted in the discovery of the toenail clipper was the result of an unlawful search, any evidence derived as a result of that search or any further searches without a warrant is tainted as the "fruit of a poisonous tree." Accordingly, the toenail clipper and each of the two watches described in the testimony of Velasquez shall be excluded as evidence in the trial of this cause.